OPINION
{¶ 1} Plaintiff-appellant Linda Duvall appeals from a summary judgment rendered against her on her claim for wrongful discharge, in violation of public policy and in violation of the Whistleblower Statute set forth in R.C. 4113.52(A)(3). Duvall contends *Page 2 
that she presented evidence sufficient to establish a genuine issue of material fact with regard to each cause of action.
 {¶ 2} We conclude that Duvall failed to establish the existence of a clear public policy that was violated when her employer, URS, terminated her employment. We further conclude that Duvall failed to establish that her actions fell under the protection of the Whistleblower statute. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In April of 2000, Duvall began working for United Rehabilitation Services of Greater Dayton ("URS") as a licensed physical therapist. As part of her duties, Duvall was required to provide hydrotherapy services to URS patients. The hydrotherapy services consisted of physical therapy in a heated swimming pool. During the course of her employment, Duvall raised various issues with URS regarding the temperature and chlorine levels of the pool used for hydrotherapy. Duvall also raised a complaint about the fact that URS required her to obtain a supervisor's approval in order to suspend or discontinue hydrotherapy regimen for patients. According to Duvall, public policy and statutory law prohibited URS from interfering with her professional judgment.
 {¶ 4} URS terminated Duvall's employment on July 10, 2001. As its reason for the discharge, URS stated that Duvall had placed a patient with cerebral palsy in a supine position in the pool despite her knowledge that the patient was afraid of being placed in such a position. URS had in place a policy which prohibited staff from using "idiosyncratic aversives that are frightening to the consumer." Duvall admitted that she had in fact attempted to curb some of the patient's unruly behavior by placing her in the *Page 3 
supine position.
 {¶ 5} Following her dismissal, Duvall brought an action claiming URS violated the Ohio Whistleblower statute (R.C. 4113.52) and public policy (R.C. 4112 et seq. and R.C. 4113 et seq.) by wrongfully discharging her. URS filed a motion for summary judgment in which it argued that Duvall was an at-will employee and that it fired her for a legitimate reason consisting of abuse of a patient contrary to company policy. Further, URS argued that she had failed to demonstrate, or even allege, that the actions of URS about which she raised her complaints were a criminal offense, as required by the Whistleblower statute. URS also argued that Duvall failed to demonstrate the existence of a clear public policy that URS violated by terminating her employment.
 {¶ 6} Duvall opposed the motion for summary judgment, arguing that she was discharged for complaining about the chlorine levels and temperature of the therapy pool and because she exercised her discretion regarding patient therapy without first consulting her supervisor.
 {¶ 7} In rendering summary judgment against Duvall, the trial court found that she could not prevail on her claim under R.C. 4113.52, because she failed to demonstrate, as required by that statute, that she had a reasonable belief that any of the alleged violations she publicized were criminal in nature. The trial court further found that Duvall was not dismissed in violation of public policy. From the summary judgment rendered against her, Duvall appeals.
 II {¶ 8} Duvall's First Assignment of Error states as follows:
 {¶ 9} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY *Page 4 
GRANTING DEFENDANTS SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY."
 {¶ 10} Duvall contends that the trial court erred by rendering summary judgment against her on her claim for wrongful discharge in violation of public policy. In support, she contends that she was discharged because of her "refusal and her lack of total cooperation with her supervisors, not licensed physical therapists themselves, but who were controlling her professional judgment over patients and her ability to exercise her professional discretion, adequately treat patients, as well as refuse to conduct therapy, in a hydrotherapy pool which failed to meet adequate safety standards."
 {¶ 11} "The traditional rule in Ohio and elsewhere is that a general or indefinite hiring is terminable at the will of either party, for any cause, no cause or even in gross or reckless disregard of any employee's rights, and a discharge without cause does not give rise to an action for damages. * * * This has become known as the `employment-at-will' doctrine." Collins v. Rizkana (1995), 73 Ohio St.3d 65, 67-68. However, an exception to this doctrine exists when a employer "wrongfully discharges an employee in violation of a clearly expressed public policy." Id. at 68.
 {¶ 12} In order to maintain an action for wrongful discharge in violation of public policy, a plaintiff must prove the following:
 {¶ 13} "1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
 {¶ 14} "2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element). *Page 5 
 {¶ 15} "3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 {¶ 16} "4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)." Id. at 70 citing, H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin. L.Rev. 397, 398-399.
 {¶ 17} In the trial court, Duvall cited R.C. 1785.03 and O.A.C. § 4755-27-02 as the basis for her claim of violation of public policy. The trial court concluded that the cited statute and code provision failed to "establish a clear public policy exception to the at-will employment doctrine."
 {¶ 18} Review by an appellate court of a trial court's decision on a motion for summary judgment is de novo. Bonacorsi v. Wheeling LakeErie Ry. Co., 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24. Civ. R. 56(C) provides that summary judgment may be granted only when no genuine issue of material fact remains to be litigated and it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party. Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317, 327. In deciding whether a genuine issue of material fact precludes summary judgment, a court must view the evidence in a light most favorable to the nonmoving party. Turner v.Turner (1993), 67 Ohio St.3d 337, 341.
 {¶ 19} R.C. 1785.03 provides in pertinent part as follows:
 {¶ 20} "No professional association formed for the purpose of providing a combination of the professional services * * * of * * * physical therapists authorized under sections 4755.40 to 4755.56
of the Revised Code * * * shall control the professional *Page 6 
clinical judgment exercised within accepted and prevailing standards of practice of a licensed * * * physical therapist * * * rendering care, treatment, or professional advice to an individual patient."
 {¶ 21} At the outset, we note that Duvall acknowledges that URS is not a professional association governed by R.C. Chapter 1783, but is instead a non-profit entity organized under R.C. Chapter 1702. However, she argues that URS "functions] within the same area, providing cross-disciplinary medical treatment to patients, as those entities directly covered by the statute [and that she] is not relying on the literal application of the statute, but rather cites the statute to demonstrate the specific public policy which protects her as a physical therapist in the circumstances of the present case." As pointed out by URS, Duvall fails to cite any support for her claim that this legislation, limited specifically to professional associations, applies to any other entity. We further note that we have found no parallel statute in Chapter 1702. Furthermore, had the General Assembly intended to include a comparable provision in the statutes governing non-profit companies, like URS, it could have done so expressly.
 {¶ 22} We next turn to the claim that O.A.C. § 4755-27-02 clearly defines a public policy. That Code provision states, in pertinent part, as follows:
 {¶ 23} "The physical therapist shall perform personally the following activities, which may not be delegated, regardless of the setting in which the service is given: interpretation of physician referrals; initial patient evaluation; initial and ongoing treatment plan of care development; periodic re-evaluation of the patient and adjustment of the plan of care and discharge evaluation."
 {¶ 24} According to Duvall, "these non-delegable tasks further reinforce and *Page 7 
exemplify the public policy insulating the professional judgment of licensed physical therapists."
 {¶ 25} As noted by URS, the issue in this case is whether Duvall's decisions were improperly subject to supervision — not whether she was forced to delegate her duties. Nor has Duvall alleged that she was required to delegate any of the above duties. Additionally, we cannot find support in the code for the proposition that physical therapists are not subject to any type of supervision.
 {¶ 26} Thus, we agree with the trial court's decision that neither of these cited provisions demonstrates a clear public policy.
 {¶ 27} Finally, we note that Duvall argues that O.A.C. § 4755-27-05 supports her public policy claim. But that section, which involves an ethical code for physical therapists, was not cited in the trial court. Therefore, it has been waived for appellate review.
 {¶ 28} Duvall's First Assignment of Error is overruled.
 III {¶ 29} Duvall's Second Assignment of Error provides:
 {¶ 30} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY HOLDING THAT PLAINTIFF HAD FAILED TO STATE A CLAIM COMMON LAW WHISTLEBLOWER [SIC] AND GRANTING DEFENDANTS SUMMARY JUDGMENT."
 {¶ 31} Duvall contends that she demonstrated evidence sufficient to create a genuine issue of fact with regard to whether URS disciplined and ultimately discharged her solely because she raised complaints about numerous allegations of improper pool *Page 8 
water temperature and chlorine levels. Thus, she contends that the trial court should have overruled URS's motion for summary judgment on her Whistleblower claim.
 {¶ 32} R.C. 4113.52, Ohio's Whistleblower statute, prohibits an employer from taking disciplinary or retaliatory action against an employee for reporting violations of the law. In order to maintain an action for relief under this statute, a plaintiff must strictly comply with the requirements of 4113.52. Behm v. Progress Plastic Products,Inc., Huron App. No. H-07-008, 2007-6357.
 {¶ 33} Duvall was employed by URS prior to the 2006 amendment of R.C. 4113.52. The provision of the Whistleblower statute in effect at that time provided as follows:
 {¶ 34} "(A)(1)(a) If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute * * *, and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, or is a felony, * * *, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. * * *"
 {¶ 35} The trial court rendered summary judgment in favor of URS upon interpreting the statute as requiring an employee to believe that the behavior complained of constitutes a criminal offense, something that Duvall did not demonstrate. Duvall contends that the statute, as written at the time, did not require a finding that the complained of behavior be criminal in nature. She argues that the statute protects *Page 9 
employees when they report something that constitutes one of the following: (1) a crime that created imminent danger of physical harm;or (2) a condition hazardous to the public health or safety; or (3) a felony.
 {¶ 36} Thus, we must determine whether the prior version of the statute required Duvall to reasonably believe that the actions of URS about which she complained constituted a criminal offense. Since statutory interpretation involves a question of law, this court does not defer to the trial court's interpretation. Furthermore, "the principles of statutory construction require courts to first look at the specific language contained in the statute, and, if unambiguous, to then apply the clear meaning of the words used." Roxane Laboratories, Inc. v.Tracy (1996), 75 Ohio St.3d 125, 127. "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42.
 {¶ 37} A review of the case law interpreting this statute reveals that this very issue has been addressed by the Sixth Circuit Court of Appeals in Brooks v. Martin Marietta Utility Servs., Inc., No. 97-4068, C.A.6 (Ohio), 1998, 1998-WL-739890, wherein the court opined:
 {¶ 38} "Appellant presents us with an interesting interpretational question. Does the statute mean that the individual must reasonably believe the violation is either (a) a criminal offense that is likely to cause either (i) an imminent risk of physical harm to persons or (ii) a hazard to public health or safety, OR (b) is a felony (`the first interpretation')? Or does it mean that the violation is either (a) a criminal offense that is likely to cause an imminent risk of physical harm to persons, OR (b) a hazard to public health or safety, OR (c) a felony (`the second interpretation')? Put another way, does the *Page 10 
employee have to believe that a violation that is a hazard to public health or safety must also be criminal?
 {¶ 39} "The first interpretation of the statute is correct. First, it is grammatically proper. The use of `either . . . or'; generally indicates that a binary relationship exists between the clauses that follow `either' (i.e., that there are two alternatives, not three). Additionally, the word `is' is used only before the words `a criminal offense' and `a felony,' it is not used before the words `a hazard.' This implies that the drafters of the statute did not mean that `a hazard to public health or safety' was to be an independent, third `option.'
 {¶ 40} "Next, the first interpretation of the statute is the one that makes logical sense. On the second interpretation, the standard for a whistleblower exposing acts that present a non-particularized hazard to public health or safety is lower than the standard for whistleblowers exposing acts that will cause imminent harm to persons, which seems contrary to reason. One would expect the lower hurdle in cases of imminent harm." Id. *4-5.
 {¶ 41} This reasoning was quoted by the Tenth District Court of Appeals in Lesko v. Riverside Methodist Hosp., Franklin App. No. 01AP-1130, 2005-Ohio-3142. See also, McGuire v. Elyria United MethodistVillage, 152 Ohio App. 3d 186, 2003-Ohio-1296, and Doody v. CenteriorEnergy Corp. (2000), 137 Ohio App. 3d 673.
 {¶ 42} We agree with this interpretation of the statute. We note that the statute has been subsequently amended to read:
 {¶ 43} "If an employee becomes aware in the course of the employee's employment of a violation by a fellow employee of any state or federal statute, any *Page 11 
ordinance or regulation of a political subdivision, or any work rule or company policy of the employee's employer and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation."
 {¶ 44} The new version of the statute evinces a clear intent to require plaintiffs to demonstrate the existence of a criminal offense, a felony or an improper solicitation in order to gain the protection of the legislation.
 {¶ 45} We conclude that the trial court correctly interpreted the Whistleblower statute, and that Duvall failed to present any evidence that the complained of behavior was of the type set forth in the statute. Therefore, the Second Assignment of Error is overruled.
 IV {¶ 46} Both of Duvall's Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., FAIN and WALTERS, JJ., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.)
 Copies mailed to: *Page 12 
John J. Scaccia
Jeffrey L. Nichols
Paul G Hallinan
Caroline H. Gentry
 Hon. Barbara P. Gorman *Page 1